IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-449

 No. COA20-418

 Filed 7 September 2021

 Nash County, No. 15 CVS 1134

 FRED COHEN, Executor of the Estate of DENNIS ALAN O’NEAL, Deceased, and
 FRED COHEN, Executor of the Estate of DEBRA DEE O’NEAL, Deceased, Plaintiffs

 v.

 CONTINENTAL MOTORS, INC. (f/k/a TELEDYNE CONTINENTAL MOTORS,
 INC. and/or TELEDYNE CONTINENTAL MOTORS); and AIRCRAFT
 ACCESSORIES OF OKLAHOMA, INC., Defendants

 Appeal by Plaintiffs from Order entered 12 March 2020 by Judge James L.

 Gale in Nash County Superior Court. Heard in the Court of Appeals 12 May 2021.

 Blanchard, Miller, Lewis & Isley, P.A., by Philip R. Miller, III; and The Wolk
 Law Firm, by Michael S. Miska, pro hac vice, for plaintiff-appellant.

 Armbrecht Jackson LLP, by Lacey D. Smith, Sherri R. Ginger, and Timothy A.
 Heisterhagen; and Williams Mullen, by Elizabeth D. Scott, for defendant-
 appellee.

 Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by J. Mitchell
 Armbruster, Christopher R. Kiger, and Amelia L. Serrat, for amicus curiae
 North Carolina Association of Defense Attorneys.

 HAMPSON, Judge.

 Factual and Procedural Background

¶1 Fred Cohen (Plaintiff), Executor of the Estates of Debra Dee O’Neal and

 Dennis Alan O’Neal (the O’Neals), appeals from an Order granting a Motion to
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 Dismiss for Lack of Personal Jurisdiction entered in favor of Continental Motors, Inc.

 (CMI). The Record before us tends to reflect the following:

 The Accident

¶2 At approximately 12:30 p.m. on 31 March 2013, the O’Neals, residents of

 Blounts Creek, North Carolina, took off from Wilkes County Airport in North

 Wilkesboro, North Carolina, flying a Lancair LC42-550FG (the Aircraft) destined for

 Warren Field Airport in Washington, North Carolina. The O’Neals were licensed and

 experienced aircraft pilots; Debra O’Neal piloted the Aircraft. After the Aircraft

 climbed to 5,000 feet, at 12:46 p.m. “the pilot declared an emergency and reported[:]

 . . . ‘low fuel pressure -- engine’s quitting.’ ” “[An] air traffic controller vectored the

 airplane toward” Smith Reynolds Airport in Winston-Salem. “[D]uring the descent[,]

 the pilot reported smoke in the cockpit and subsequently reported that the engine

 was ‘barely’ producing power.” Data from the accident would later reveal the engine

 had lost power after losing oil pressure. At 12:50 p.m., approximately three miles

 west of Smith Reynolds Airport, the Aircraft made a forced landing, collided with

 trees and terrain, and burst into flames, killing both O’Neals. Plaintiff was appointed

 as the Executor of the O’Neals respective Estates.

 Continental Motors, Inc.

¶3 CMI “is a Delaware corporation with a principal place of business in Mobile,

 Alabama.” “CMI is engaged in the business of designing, manufacturing, and selling
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 aircraft engines and component parts.” According to its then-Director of Certification

 and Airworthiness, Michael E. Ward (Ward), during deposition, “C[MI] markets to

 the flying public at large . . . [and] ha[s] an international market.” In fact, CMI

 claims, “[f]rom 2010 to 2013, [it] sold parts in all fifty United States[,]” including

 North Carolina, “as well as in other countries.”

¶4 CMI’s business model involves “sell[ing] through distribution, so [it] ha[s]

 distributors that purchase [CMI] parts and sell [them] into the aviation public.”

 Thus, from 2010 to 2013, “distributors would order parts from C[MI], and the[] [parts]

 would be shipped either to the distributor or drop-shipped to the customer at the

 distributor’s request.” “Triad Aviation” (Triad), “located in Burlington, North

 Carolina . . . operated as a distributer for C[MI] parts from 2010 to 2013.” More

 specifically, “[f]rom May 2010 to August 2013, C[MI] engaged in 2,948 sales of

 component parts with a total value of $3,933,480.65 through Triad . . . .” North

 Carolina “orders were taken from Triad . . . , and the parts were delivered either to

 Triad or drop shipped at [customers’] instructions.”1

¶5 During the 2010-2013 period, Air Care Aviation Services (Air Care), “a

 1 As Timothy J. Padgett (Padgett), then-Director of Maintenance at Air Care Aviation

 Services, confirmed during his deposition, “if [someone] needed to get . . . a C[MI] part for
 [their] plane, [they]’d call up . . . Triad” or another distributor known as “Aviall . . . to get
 it[.]” However, “if [customers] need[ed] to troubleshoot a problem with a [CMI] component . . .
 [they]’d have to go to C[MI] for that.”
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 maintenance and avionics provider” headquartered and with principal place of

 business in North Carolina, sold and serviced CMI components. CMI made “no direct

 sales to Air Care”; however, “Triad . . . purchased approximately twelve (12) products

 from C[MI] that were drop-shipped to Air Care from approximately May 2010 to

 August 2013.” Although it does not appear it was standard practice to do so at the

 time, “on occasion” Air Care would call CMI for support.

¶6 CMI “[wa]s the Type Certificate Holder for IO-550-N series engines such as

 the” engine inside the Aircraft, “and provide[d] continued airworthiness instructions

 for that engine series in compliance with Federal Aviation Administration . . .

 regulations[.]” During the 2010-2013 period, CMI’s “in-house[,]” “online technical

 library and the service instructions it contained were available to service centers like

 Air Care through a subscription to C[MI]’s FBO2 Services Link.” “To subscribe to

 C[MI]’s FBO Service[s] Link, a subscriber would go to C[MI]’s website to create a

 profile and pay a subscription fee.” “Once that fee was paid, the computer program

 would authorize the subscription, and [subscribers] would have access to the

 publications.” CMI would then “post[] service updates to service bulletins in its online

 2 According to the FAA, FBO stands for “Fixed Base Operator.” Federal Aviation
 Administration, Airport Acronyms and Abbreviations 43,
 https://www.faa.gov/airports/resources/acronyms/#f (last visited July 21, 2021). “A Fixed
 Base Operator engages in and furnishes a full range of aeronautical products, services and
 facilities to the public[.]” Duluth International Airport, Rules and Standards, (June 2014)
 https://www.lsc.edu/wp-content/uploads/DLH-Rules-and-Standards.pdf.
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 library and notif[y] subscribers of those updates through e-mail broadcasts.” Through

 this technical library, “subscribers would have access to manuals, overhaul manuals,

 [and] maintenance manuals, [all] for [the] subscription fee.” Additionally, “[w]hen an

 engine ships from C[MI], there is a log-book package that goes with the engine. And

 as part of that log-book package there is a compact disc that has the maintenance

 manuals for that engine as well as some other information.”3 In summary, during

 the 2010-2013 period, all this information was made available to subscribers directly

 from CMI. CMI “had fourteen North Carolina subscribers[,]” including Air Care.

 The Aircraft

¶7 At the time of the crash, the Aircraft was privately owned by the O’Neals and

 registered in North Carolina. Prior to the O’Neals’ purchase of the Aircraft in 2010,

 it had been owned by at least one other owner. The Aircraft, manufactured in 2003,

 “was equipped with a C[MI] IO-550N, 310-horsepower engine.” “CMI designed and

 manufactured the IO-550-N2B engine . . . at its facility in Mobile, Alabama.” “The

 [e]ngine was sold and shipped to The Lancair Company . . . in Bend, Oregon on or

 around March 31, 2002.” “The [e]ngine was [then] installed in the . . . [A]ircraft[.]”

¶8 “The [e]ngine, as sold by CMI to Lancair, was assembled with a starter

 3 According to Ward, CMI also had, “from September 2013 to May of 2015 . . . one

 employee, a service representative, who was based out of North Carolina, although his duties
 were unrelated to this matter.”
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 adapter4 . . . in accordance with CMI’s FAA-approved Type Design Data for the

 [e]ngine.” “[T]h[is] original starter adapter . . . assembled to the [e]ngine by CMI was

 removed and replaced with a different model starter adapter . . . sometime while the

 Aircraft and [e]ngine were at Lancair’s facility in Bend[.]”

¶9 The O’Neals were customers of Air Care, and Air Care provided service and

 maintenance for the Aircraft. As part of its servicing and maintenance of the Aircraft,

 “Air Care installed a third starter adapter” (the Starter Adapter), “which was on the

 [e]ngine at the time of the accident[.]” Air Care “purchased the Starter Adapter from

 [d]efendant Aircraft Accessories of Oklahoma, Inc.” (Aircraft Accessories) “as an

 overhauled starter adapter unit on or around January 29, 2013.” This overhauled

 replacement was made because the second starter adapter “was slipping.”5 The third

 and final Starter Adapter was a CMI component, overhauled by Aircraft Accessories.

¶ 10 Air Care mechanic Justin Pearson (Pearson) installed the Starter Adapter “on

 or around February 11, 2013.” Pearson used CMI’s “maintenance manual to reinstall

 the engine and the engine mounts,” as well as to “reinstall[] [the] A/C mount bracket,

 A/C compressor, air oil separat[o]r and starter with new O-ring . . . .” In fact, Air

 Care’s mechanics at large “were expected to” use CMI’s online library through Air

 4 According to Padgett, a starter adapter is “a component that resides on the back of

 the engine which engages with the drive of the engine for the starter.”
 5 During his deposition, Padgett testified “slipping” “means that when your starter’s

 engaged, that the adapter is not turning the engine over.”
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

Care’s subscription when Air Care inspectors determined it was necessary for the

mechanics to do so. Furthermore, “[t]he service instructions pertaining to the

installation of the . . . Starter Adapter were in C[MI]’s IO-550 Permold Series Engine

Maintenance and Overhaul Manual . . . .” As to whether the Starter Adapter was

installed pursuant to CMI’s manual, Timothy J. Padgett (Padgett), Director of

Maintenance at Air Care, testified the following in deposition:

 Q. . . . . Do you expect that Air Care and [] Pearson would
 have followed the maintenance instructions with respect to the
 installation of the [S]tarter [A]dapter that C[MI] provided?
 A. Yes.
 Q. Do you believe that you used anybody’s installation
 instructions for that [S]tarter [A]dapter?
 A. No.
 Q. In fact, do you believe [Pearson] solely followed the
 maintenance and installation procedures set forth in the C[MI]
 manual?
 A. Yes.
 Q. Is it Air Care’s practice to utilize this manual as far as
 what instructions it uses in performing maintenance?
 A. Yes.
 Q. Do you believe that [] Pearson would have inspected the
 [S]tarter [A]dapter that was received from Aircraft Accessories of
 Oklahoma in accordance with the procedures enumerated in
 Section 10 of the C[MI] manual?
 A. I believe so.
 Q. Do you believe [] Pearson inspected it to see if there was
 a plug installed that’s been identified in the parts diagram as
 either number 54 or number 55?
 A. I would believe so.
 Q. And when you signed off on that logbook entry, did you
 believe that the installation had been done in accordance with the
 C[MI] instructions?
 A. Yes.
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 Plaintiff’s Suit

¶ 11 On 12 March 2015, Plaintiff filed the Complaint on behalf of the Estates

 against CMI and Air Care, among others.6 Against CMI, Plaintiff alleged claims

 including: Strict Liability; Negligence; Breach of Express and Implied Warranties;

 Negligent Misrepresentation; Fraud; “Recklessness, Outrageousness, Willful and

 Wanton Conduct”; and a claim under N.C. Gen. Stat. Section 75-1.1. “[The] claims

 against C[MI] are predicated upon two theories of liability—that the . . . Starter

 Adapter was subject to a design defect, and that the Service Manual upon which Air

 Care allegedly relied when installing the . . . Starter Adapter was defective.”

¶ 12 On 22 May 2015, CMI filed its Answer, which included as an affirmative

 defense: “[t]hese Defendants assert that this Court does not have personal

 jurisdiction over these Defendants.” On 2 November 2018, after several years and a

 few exchanges of discovery, CMI filed a Motion to Dismiss the Complaint under Rule

 12(b)(2) of the North Carolina Rules of Civil Procedure for Lack of Personal

 Jurisdiction. In its Motion, CMI, in relevant part, argued the following:

 Neither the engine, nor the [S]tarter [A]dapter in question, was
 designed, manufactured, or sold by CMI in North Carolina.
 Instead, the engine and the [S]tarter [A]dapter were designed and
 manufactured in Alabama. The engine, with its original starter
 adapter, was then sold from CMI’s factory in Mobile to Lancair in

 6 The Complaint was originally filed in Wilson County; venue was then changed to

 Nash County.
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 Bend, Oregon. The original starter adapter was then later
 removed by third parties and eventually replaced with an
 overhauled part provided by third parties. The engine and
 accident [S]tarter [A]dapter ended up in North Carolina not
 through CMI’s actions, but rather through the unilateral actions
 of other parties.

 ....

 CMI is not currently registered or otherwise licensed to do
 business in North Carolina, although it was registered with the
 North Carolina Secretary of State . . . for a brief period from
 November 2013 to August 2015 . . . .

 In the last five years, CMI has not maintained offices, places of
 business, post office boxes, or telephone listings in North
 Carolina; has had no real estate, bank accounts, or other interests
 in property in North Carolina; did not incur any obligation to pay,
 and has not paid, income taxes in North Carolina; did not have
 any warehouses, repair stations, sales agents, dealers, or other
 sales representatives located in North Carolina on a permanent
 or regular basis; has not conducted any regular or ongoing
 advertising, solicitation, marketing, or other sales promotions
 directed toward residents of North Carolina; and has not
 contracted to do business with any resident of North Carolina for
 purposes of distributing, servicing or marketing goods . . . .

¶ 13 The trial court heard arguments on CMI’s Motion on 10 September 2019,

 during which the parties submitted affidavits and depositions in support of their

 respective arguments. The trial court further permitted limited additional discovery

 to be conducted post-hearing on the issue of personal jurisdiction and invited the

 parties to submit supplemental briefing. “After supplemental materials and briefs

 were submitted, the [trial] [c]ourt heard further oral argument on February 6, 2020.”

¶ 14 In an Order dated 12 March 2020, the trial court granted CMI’s Motion to
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 Dismiss for Lack of Personal Jurisdiction, concluding, in pertinent part: “C[MI] has

 not waived its defense to personal jurisdiction and is not estopped from asserting it;”

 and “Plaintiff has not demonstrated that the exercise of specific jurisdiction over

 C[MI] is appropriate by a preponderance of evidence . . . .” With respect to the issue

 of waiver, the trial court reasoned, “[a]cknowledging that North Carolina’s appellate

 courts have not addressed at length the issue of post-objection waiver[,]” that “[i]n

 most federal cases, the courts have required more than the passage of time and

 participation in limited discovery to find waiver” and “[i]n circumstances where

 waiver is found, the defendant has usually fully participated in the merits of the

 litigation or sought affirmative relief from the court.” Thus, the trial court concluded

 CMI, after raising the defense of lack of personal jurisdiction in its Answer, “ha[d]

 participated only in limited written discovery bearing on matters related to specific

 jurisdiction and ha[d] requested no affirmative relief from the [c]ourt[.]”

¶ 15 Next, on the merits of CMI’s Motion to Dismiss for Lack of Personal

 Jurisdiction, the trial court supported its conclusion with the following reasoning:

 “To determine whether it may assert specific jurisdiction over a
 defendant, the court considers ‘(1) the extent to which the
 defendant “purposefully availed” itself of the privilege of
 conducting activities in the State; (2) whether the plaintiff[’s]
 claims arise out of those activities directed at the State; and (3)
 whether the exercise of personal jurisdiction would be
 constitutionally “reasonable.” ’ ”

 ....
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 While C[MI]’s broader contacts with North Carolina may be
 pertinent to the final question of whether exercising personal
 jurisdiction would be reasonable, the [c]ourt concludes that
 C[MI]’s characterization of the purposeful availment inquiry is
 consistent with controlling case law . . . .

 “The United State[s] Supreme Court has emphasized that
 ‘specific jurisdiction is confined to adjudication of issues deriving
 from, or connected with, the very controversy that establishes
 jurisdiction.’ ”

 ....

 First, even if the [c]ourt assumes without deciding that C[MI]’s
 distributor relationships and sales in North Carolina are
 purposeful contacts with the State adequate to satisfy specific
 jurisdiction over claims arising from those contacts, those are
 unrelated to Plaintiff’s claims against C[MI] in this litigation.

 ....

 Second, the Court agrees with C[MI] that the specific acts
 connected to the accident upon which Plaintiff relies do not
 support a finding that C[MI] purposely availed itself of doing
 business in North Carolina regarding those acts. Specifically,
 Plaintiff relies on C[MI]’s Service Manual and the FBO Services
 Link through which the Service Manual was made available to
 Air Care.

 ....

 A passive [w]eb site that does little more than make information
 available to those who are interested in it is not grounds for the
 exercise [of] personal jurisdiction.

The trial court then granted CMI’s Motion. Plaintiff filed written Notice of Appeal

on 9 April 2020.

 Appellate Jurisdiction
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

¶ 16 “An interlocutory order is one made during the pendency of an action, which

 does not dispose of the case, but leaves it for further action by the trial court in order

 to settle and determine the entire controversy.” Veazey v. City of Durham, 231 N.C.

 357, 362, 57 S.E.2d 377, 381 (1950). Here, the Order granting CMI’s Motion to

 Dismiss for Lack of Personal Jurisdiction is interlocutory because it does not dispose

 of the case in that it leaves Plaintiff’s claims against Aircraft Accessories still pending

 for resolution.7 See Peterson v. Dillman, 245 N.C. App. 239, 242, 782 S.E.2d 362, 365

 (2016) (“An appeal is interlocutory when noticed from an order entered during the

 pendency of an action, which does not dispose of the entire case and where the trial

 court must take further action in order to finally determine the rights of all parties

 involved in the controversy.” (citation omitted)). “Generally, there is no right of

 immediate appeal from interlocutory orders and judgments.” Sharpe v. Worland, 351

 N.C. 159, 161, 522 S.E.2d 577, 578 (1999) (citations omitted). However, by statute,

 “[a]ny interested party shall have the right of immediate appeal from an adverse

 ruling as to the jurisdiction of the court over the person or property of the defendant

 or such party may preserve his exception for determination upon any subsequent

 7 In an earlier appeal in this case, this Court affirmed the trial court’s denial of
 Aircraft Accessories’ Motion to Dismiss for Lack of Personal Jurisdiction, holding “the trial
 court did not err by concluding that Aircraft Accessories had sufficient minimum contacts
 with North Carolina to justify the exercise of personal jurisdiction over it without violating
 the due process clause.” Cohen v. Cont’l Motors, Inc., 253 N.C. App. 407, 799 S.E.2d 72 (2017)
 (unpublished) (slip op. at *11).
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 appeal in the cause.” N.C. Gen. Stat. § 1-277(b) (2019); see also § 7A-27(b)(4)

 (“[A]ppeal lies of right directly to the Court of Appeals . . . [f]rom any . . . order or

 judgment of the superior court from which an appeal is authorized by statute.”).

¶ 17 Furthermore, “immediate appeal is available from an interlocutory order or

 judgment which affects a ‘substantial right.’ ” Sharpe, 351 N.C. at 162, 522 S.E.2d at

 579 (citations omitted); see also N.C. Gen. Stat. § 1-277(a) (“An appeal may be taken

 from every judicial order or determination of a judge of a superior or district court,

 upon or involving a matter of law or legal inference, whether made in or out of session,

 which affects a substantial right claimed in any action or proceeding . . . .”); see also

 § 7A-27(b)(3)(a) (“[A]ppeal lies of right directly to the Court of Appeals . . . [f]rom an

 interlocutory order or judgment of a superior court or district court in a civil action

 or proceeding that . . . [a]ffects a substantial right.”). This Court has concluded

 “motions to dismiss for lack of personal jurisdiction affect a substantial right and are

 immediately appealable.” A.R. Haire, Inc. v. St. Denis, 176 N.C. App. 255, 257-58,

 625 S.E.2d 894, 898 (2006). Accordingly, immediate appeal is appropriate in this

 case.

 Issues

¶ 18 The relevant issues on appeal are whether the trial court erred by granting

 CMI’s Motion to Dismiss for Lack of Personal Jurisdiction on the bases: (I) CMI had

 not waived its personal jurisdiction challenge; and (II) the trial court lacked personal
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 jurisdiction over CMI.

 Analysis

¶ 19 “The standard of review to be applied by a trial court in deciding a motion

 under Rule 12(b)(2) depends upon the procedural context confronting the court.”

 Banc of Am. Secs. LLC v. Evergreen Int’l Aviation, Inc., 169 N.C. App. 690, 693, 611

 S.E.2d 179, 182 (2005).

 Typically, the parties will present personal jurisdiction issues in
 one of three procedural postures: (1) the defendant makes a
 motion to dismiss without submitting any opposing evidence; (2)
 the defendant supports its motion to dismiss with affidavits, but
 the plaintiff does not file any opposing evidence; or (3) both the
 defendant and the plaintiff submit affidavits addressing the
 personal jurisdiction issues.

 Id. In this case, the parties submitted dueling affidavits and other discovery

 materials in support of their respective jurisdictional arguments; therefore, this case

 falls into the third category. See id.

¶ 20 If the parties “submit dueling affidavits[,] . . . the court may hear the matter

 on affidavits presented by the respective parties, . . . [or] the court may direct that

 the matter be heard wholly or partly on oral testimony or depositions.” Id. at 694,

 611 S.E.2d at 183 (second and third alterations in original; citations and quotation

 marks omitted); see also Bruggeman v. Meditrust Acquisition Co., 138 N.C. App. 612,

 615, 532 S.E.2d 215, 217 (2000) (“If the exercise of personal jurisdiction is challenged

 by a defendant, a trial court may hold an evidentiary hearing including oral testimony
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 or depositions or may decide the matter based on affidavits.” (citation omitted)). In

 addition, where “defendants submit some form of evidence to counter plaintiffs’

 allegations, those allegations can no longer be taken as true or controlling and

 plaintiffs cannot rest on the allegations of the complaint.” Bruggeman, 138 N.C. App.

 at 615-16, 532 S.E.2d at 218 (citations omitted). Where the trial court elects to decide

 the motion to dismiss on competing affidavits, “the plaintiff has the initial burden of

 establishing prima facie that jurisdiction is proper. Of course, this procedure does

 not alleviate the plaintiff’s ultimate burden of proving personal jurisdiction at an

 evidentiary hearing or at trial by a preponderance of the evidence.” Id. at 615, 532

 S.E.2d at 217 (citations omitted). “If the trial court chooses to decide the motion based

 on affidavits, the trial judge must determine the weight and sufficiency of the

 evidence presented in the affidavits much as a juror.” Banc of Am. Secs. LLC, 169

 N.C. App. at 694, 611 S.E.2d at 183 (alterations, citation, and quotation marks

 omitted).

¶ 21 Thus, in this context, “[t]he standard of review of an order determining

 personal jurisdiction is whether the findings of fact by the trial court are supported

 by competent evidence in the record[.]” Bell v. Mozley, 216 N.C. App. 540, 543, 716

 S.E.2d 868, 871 (2011) (second alteration in original; quotation marks omitted)

 (quoting Replacements, Ltd. v. MidweSterling, 133 N.C. App. 139, 140-41, 515 S.E.2d

 46, 48 (1999)). “We review de novo the issue of whether the trial court’s findings of
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 fact support its conclusion of law that the court has personal jurisdiction over

 defendant.” Id. (citation omitted).

 I. Waiver

¶ 22 Plaintiff argues the trial court erred in concluding CMI had not waived its

 defense of Lack of Personal Jurisdiction by way of its “long participation in litigation

 on the merits” and, thus, in allowing CMI to raise this challenge in its Motion to

 Dismiss for Lack of Personal Jurisdiction.

¶ 23 “Every defense, in law or fact, to a claim for relief in any pleading . . . shall be

 asserted in the responsive pleading thereto if one is required, except[,]” among others,

 “[l]ack of jurisdiction over the person[,]” which “may at the option of the pleader be

 made by motion . . . .” N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) (emphasis added). Rule

 12(b) further provides:

 A motion making any of these defenses shall be made before
 pleading if a further pleading is permitted. The consequences of
 failure to make such a motion shall be as provided in sections (g)
 and (h). No defense or objection is waived by being joined with
 one or more other defenses or objections in a responsive pleading
 or motion.

 § 1A-1, 12(b). Then, per Rule 12(h),

 [a] defense of lack of jurisdiction over the person . . . is waived (i)
 if omitted from a motion in the circumstances described in section
 (g), or (ii) if it is neither made by motion under this rule nor
 included in a responsive pleading or an amendment thereof
 permitted by Rule 15(a) to be made as a matter of course.
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 § 1A-1, Rule 12(h)(1).

¶ 24 Here, CMI raised the defense of Lack of Personal Jurisdiction in its Answer to

 Plaintiff’s Complaint. Thus, pursuant to Rule 12 of our statutory Rules of Civil

 Procedure, because CMI raised this defense in a responsive pleading, CMI’s

 jurisdictional challenge was not waived. See id.; see also Ryals v. Hall-Lane Moving

 & Storage Co., 122 N.C. App. 242, 247, 468 S.E.2d 600, 604 (1996) (“A defendant . . .

 cannot submit himself to the jurisdiction of the court or waive the defense of lack of

 personal jurisdiction by filing an answer which contains the defense of lack of

 personal jurisdiction . . . and/or engaging in discovery[.]” (citations omitted)).

 Accordingly, CMI’s Motion to Dismiss for Lack of Personal Jurisdiction was not

 improper, and the trial court did not err in concluding CMI had not waived its

 jurisdictional challenge.

 II. Personal Jurisdiction

¶ 25 The North Carolina Supreme Court has held

 that a two-step analysis must be employed to determine whether
 a non-resident defendant is subject to the in personam
 jurisdiction of our courts. First, the transaction must fall within
 the language of the State’s “long-arm” statute. Second, the
 exercise of jurisdiction must not violate the due process clause of
 the fourteenth amendment to the United States Constitution.

 Tom Togs, Inc. v. Ben Elias Indus. Corp., 318 N.C. 361, 364, 348 S.E.2d 782, 785

 (1986) (citations omitted). In this case, the parties appear to agree North Carolina’s
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 “long-arm” statute is applicable to this case. Rather, the parties focus on the question

 of whether the exercise of personal jurisdiction in this case is consistent with the Due

 Process Clause of the Fourteenth Amendment.

¶ 26 The Supreme Court of the United States recently addressed the issue of a state

 court’s authority to assert personal jurisdiction over an out-of-state Defendant under

 the Fourteenth Amendment in Ford Motor Co. v. Montana Eight Jud. Dist. Ct., ___

 U.S. ___ (2021).8 “The Fourteenth Amendment’s Due Process Clause limits a state

 court’s power to exercise jurisdiction over a defendant.” Id. at ___ (slip op. at *4). Our

 courts “recogniz[e] two kinds of personal jurisdiction: general . . . jurisdiction and

 specific . . . jurisdiction.” Id. at ___ (slip op. at *5) (citing Goodyear Dunlop Tires

 Operations, S. A. v. Brown, 564 U.S. 915, 919 (2011)). Specific jurisdiction “covers

 defendants less intimately connected with a State, but only as to a narrower class of

 claims. The contacts needed for this kind of jurisdiction often go by the name

 ‘purposeful availment.’ ” Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462,

 475 (1985)). “The defendant . . . must take ‘some act by which [it] purposefully avails

 itself of the privilege of conducting activities within the forum State.’ ” Id. (bracket

 in original) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1985)). “The contacts

 must be the defendant’s own choice and not ‘random, isolated, or fortuitous.’ ” Id. at

 8 We acknowledge that the trial court did not have the benefit of this decision at the

 time it ruled on CMI’s Motion.
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 ___ (slip op. at *6) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774

 (1984)). “The[se] [contacts] must show that the defendant deliberately ‘reached out

 beyond’ its home—by, for example, ‘exploi[ting] a market’ in the forum State or

 entering a contractual relationship centered there.’ ” Id. (second bracket in original)

 (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014)). “Yet even then . . . the forum

 State may exercise jurisdiction in only certain cases. The plaintiff’s claims . . . ‘must

 arise out of or relate to the defendant’s contacts’ with the forum.” Id. (quoting Bristol-

 Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty., 582 U.S. ___, ___, 137

 S.Ct. 1773, 1780 (2017)). “[P]ut just a bit differently, there must be an affiliation

 between the forum and the underlying controversy, principally, [an] activity or an

 occurrence that takes place in the forum State and is therefore subject to the State’s

 regulation.” Id. (second bracket in original; quotation marks omitted) (quoting

 Bristol-Myers, 582 U.S. at ___, 137 S.Ct. at 1780).

¶ 27 In Ford, the action arose out of two distinct vehicle accidents, in Montana and

 Minnesota respectively, involving two Ford vehicles. Id. at ___ (slip op. at *2). Ford,

 the defendant, “a global auto company . . . incorporated in Delaware and

 headquartered in Michigan[,]” conceded “it does substantial business in Montana and

 Minnesota[,] that it actively seeks to serve the market for automobiles and related

 products in those [s]tates[,]” and that “it ha[d] purposefully avail[ed] itself of the

 privilege of conducting activities in both places.” Id. at ___ (slip op. at *2, 7-8) (last
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 bracket in original; quotation marks omitted). However, Ford argued “those activities

 d[id] not sufficiently connect to the suits, even though the resident-plaintiffs allege

 that Ford cars malfunctioned in the forum States. In Ford’s view, the needed link

 [had to] be causal in nature[,]” claiming “[j]urisdiction attaches only if the defendant’s

 forum conduct gave rise to the plaintiff ’s claims.” Id. at ___ (slip op. at *8) (quotation

 marks omitted).

¶ 28 The Supreme Court disagreed:

 None of our precedents has suggested that only a strict causal
 relationship between the defendant’s in-state activity and the
 litigation will do. As just noted, our most common formulation of
 the rule demands that the suit “arise out of or relate to the
 defendant’s contacts with the forum.” The first half of that
 standard asks about causation; but the back half, after the “or,”
 contemplates that some relationships will support jurisdiction
 without a causal showing. That does not mean anything goes. In
 the sphere of specific jurisdiction, the phrase “relate to”
 incorporates real limits, as it must to adequately protect
 defendants foreign to a forum. But again, we have never framed
 the specific jurisdiction inquiry as always requiring proof of
 causation—i.e., proof that the plaintiff’s claim came about because
 of the defendant’s in-state conduct.

 Id. at ___ (slip op. at *8-9) (last emphasis added; citations omitted). The Supreme

 Court then drew the following example:

 [I]ndeed, this Court has stated that specific jurisdiction attaches
 in cases identical to the ones here—when a company like Ford
 serves a market for a product in the forum State and the product
 malfunctions there. In World-Wide Volkswagen, the Court held
 that an Oklahoma court could not assert jurisdiction over a New
 York car dealer just because a car it sold later caught fire in
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 Oklahoma. But in so doing, we contrasted the dealer’s position to
 that of two other defendants—Audi, the car’s manufacturer, and
 Volkswagen, the car’s nationwide importer (neither of which
 contested jurisdiction):

 “[I]f the sale of a product of a manufacturer or distributor such as
 Audi or Volkswagen is not simply an isolated occurrence, but
 arises from the efforts of the manufacturer or distributor to serve,
 directly or indirectly, the market for its product in [several or all]
 other States, it is not unreasonable to subject it to suit in one of
 those States if its allegedly defective merchandise has there been
 the source of injury to its owner or to others.”

 Or said another way, if Audi and Volkswagen’s business
 deliberately extended into Oklahoma (among other States), then
 Oklahoma’s courts could hold the companies accountable for a
 car’s catching fire there—even though the vehicle had been
 designed and made overseas and sold in New York. For, the Court
 explained, a company thus “purposefully avail[ing] itself” of the
 Oklahoma auto market “has clear notice” of its exposure in that
 State to suits arising from local accidents involving its cars. And
 the company could do something about that exposure: It could
 “act to alleviate the risk of burdensome litigation by procuring
 insurance, passing the expected costs on to customers, or, if the
 risks are [still] too great, severing its connection with the State.”

Id. at ___ (slip op. at *9-10) (all but first alterations in original; citations omitted).

Then, the Supreme Court reasoned:

 Ford had systematically served a market in Montana and
 Minnesota for the very vehicles that the plaintiffs allege
 malfunctioned and injured them in those States. So there is a
 strong “relationship among the defendant, the forum, and the
 litigation”—the “essential foundation” of specific jurisdiction.
 That is why this Court has used this exact fact pattern (a
 resident-plaintiff sues a global car company, extensively serving
 the state market in a vehicle, for an in-state accident) as an
 illustration—even a paradigm example—of how specific
 jurisdiction works.
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 Id. at ___ (slip op. at *12) (citations omitted).

¶ 29 The fact pattern before us in the instant case is analogous. Here, CMI, by its

 employee’s own admission, “markets to the flying public at large . . . [and] ha[s] an

 international market.” In fact, “[f]rom 2010 to 2013, C[MI] sold parts in all fifty

 United States as well as in other countries[,]” which included the forum state, North

 Carolina. Although CMI did not sell components to individual aircraft owners

 themselves, it actively maintained a business model that operated through

 independent distributors—including Triad, based in North Carolina. This made it so

 that if aircraft owners in North Carolina needed to purchase CMI parts, they would

 do so through Triad. Furthermore, during the time frame of the accident, CMI made

 it so that individuals across its international market, including those in North

 Carolina, could access its online database for a fee, thus drawing a benefit to itself

 from the “privilege of conducting activities” with North Carolina subscribers. See id.

 at ___ (slip op. at *5). One such North Carolina subscriber, Air Care, was in fact

 “expected to” rely on the information CMI provided through its subscriptions to

 operate on any aircrafts bearing CMI parts. In fact, even presuming arguendo

 Pearson, the Air Care mechanic, did not rely on CMI instructions to install the Starter

 Adapter, the evidence clearly indicates Pearson did indeed rely on CMI literature to

 operate on other components inside the O’Neals’ Aircraft. The facts, thus, paint a

 clear picture: at the time of the accident, CMI “serve[d] a market for a product in the
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 forum [s]tate” of North Carolina. See id. at ___ (slip op. at *9).

¶ 30 Consistent with CMI’s business model, CMI’s Starter Adapter was overhauled

 by Aircraft Accessories, moved to Triad (in North Carolina), then to Air Care (in

 North Carolina), and was finally installed in the O’Neals’ Aircraft (in North

 Carolina). Thereafter, CMI’s product allegedly malfunctioned in North Carolina,

 causing the accident. Applying the reasoning of Ford to this case: “the sale of [CMI’s]

 product . . . [wa]s not simply an isolated occurrence, but ar[o]se[] from the efforts of

 [CMI] to serve, directly or indirectly, the [North Carolina] market . . . .” See id. at ___

 (slip op. at *10) (emphasis added). In fact, “[f]rom May 2010 to August 2013, C[MI]

 engaged in 2,948 sales of component parts with a total value of $3,933,480.65” in

 North Carolina, serving the North Carolina market indirectly by operating “through

 Triad . . . .” Thus, “it is not unreasonable to subject [CMI] to suit in [North Carolina]”

 since “its allegedly defective [Starter Adapter] has there been the source of injury to

 its owner[s][,]” the O’Neals. See id.

¶ 31 Indeed, “this exact fact pattern (a resident-plaintiff sues a global [aviation]

 company, extensively serving the state market . . . for an in-state accident)” also

 effectively functions “as an illustration—even a paradigm example—of how specific

 jurisdiction works.” See id. at ___ (slip op. at *2). Therefore, applying Ford to the

 particular facts of this case, exercise of personal jurisdiction in North Carolina over

 CMI does not offend the Due Process Clause of the Fourteenth Amendment.
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Opinion of the Court

 Consequently, in light of the Ford opinion issued after the trial court’s Order in this

 case, we must conclude the trial court erred in granting CMI’s Motion to Dismiss for

 Lack of Personal Jurisdiction on this basis.

 Conclusion

¶ 32 Accordingly, for the foregoing reasons, we affirm in part and reverse in part

 the trial court’s Order granting CMI’s Rule 12(b)(2) Motion to Dismiss for Lack of

 Personal Jurisdiction. We remand this matter to the trial court for purposes of

 permitting the parties to pursue further proceedings on the merits of this litigation.

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

 Judge WOOD concurs.

 Judge TYSON concurs in part and concurs in the result in part by separate

 opinion.
 No. COA20-418 – Cohen v. Continental Motors, Inc.

 TYSON, Judge, concurring in part and concurring in the result in part.

¶ 33 I fully concur with the majority’s analysis and conclusion that Continental

 Motors, Inc. (“CMI”) properly raised the defense of lack of personal jurisdiction in its

 Answer to Plaintiff’s Complaint. Because this defense was raised in its first

 responsive pleading, CMI’s jurisdictional challenge was not waived. I also agree and

 concur with the conclusion this interlocutory appeal is properly before this Court.

¶ 34 I concur in the result with the majority’s opinion holding CMI can be haled into

 North Carolina’s courts consistent with the Due Process Clause of the Fourteenth

 Amendment and North Carolina’s long-arm jurisdiction statute. I write separately

 to catalog and limit the analysis on specific personal jurisdiction to CMI’s activities

 within North Carolina. The trial court’s order granting CMI’s Rule 12(b)(2) Motion

 to Dismiss for Lack of Personal Jurisdiction, entered prior to the Supreme Court of

 the United States’ decision in Ford, is properly affirmed in part, reversed in part, and

 remanded.

¶ 35 CMI’s Motion to Dismiss the Complaint, under Rule 12(b)(2) of the North

 Carolina Rules of Civil Procedure for Lack of Personal Jurisdiction, argued, in

 relevant part, the following:

 Neither the engine, nor the [S]tarter [A]dapter in question, was
 designed, manufactured, or sold by CMI in North Carolina.
 Instead, the engine and the [S]tarter [A]dapter were designed and
 manufactured in Alabama. The engine, with its original starter
 adapter, was then sold from CMI’s factory in Mobile to Lancair in
 Bend, Oregon. The original starter adapter was then later
 removed by third parties and eventually replaced with an
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Tyson, J., concurring in part and concurring in the result in part

 overhauled part provided by third parties. The engine and
 accident [S]tarter [A]dapter ended up in North Carolina not
 through CMI’s actions, but rather through the unilateral actions
 of other parties.

 ....

 CMI is not currently registered or otherwise licensed to do
 business in North Carolina, although it was registered with the
 North Carolina Secretary of State . . . for a brief period from
 November 2013 to August 2015 . . . .

 In the last five years, CMI has not maintained offices, places of
 business, post office boxes, or telephone listings in North
 Carolina; has had no real estate, bank accounts, or other interests
 in property in North Carolina; did not incur any obligation to pay,
 and has not paid, income taxes in North Carolina; did not have
 any warehouses, repair stations, sales agents, dealers, or other
 sales representatives located in North Carolina on a permanent
 or regular basis; has not conducted any regular or ongoing
 advertising, solicitation, marketing, or other sales promotions
 directed toward residents of North Carolina; and has not
 contracted to do business with any resident of North Carolina for
 purposes of distributing, servicing or marketing goods . . . .

¶ 36 The trial court granted CMI’s Motion to Dismiss for Lack of Personal

 Jurisdiction, and properly supported its conclusion with the following reasoning:

 To determine whether it may assert specific jurisdiction over a
 defendant, the court considers “(1) the extent to which the
 defendant ‘purposefully availed’ itself of the privilege of
 conducting activities in the State; (2) whether the plaintiff[’s]
 claims arise out of those activities directed at the State; and (3)
 whether the exercise of personal jurisdiction would be
 constitutionally ‘reasonable.’”

 ....

 While C[MI]’s broader contacts with North Carolina may be
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Tyson, J., concurring in part and concurring in the result in part

 pertinent to the final question of whether exercising personal
 jurisdiction would be reasonable, the [c]ourt concludes that
 C[MI]’s characterization of the purposeful availment inquiry is
 consistent with controlling case law . . . .

 The United State[s] Supreme Court has emphasized that “specific
 jurisdiction is confined to adjudication of issues deriving from, or
 connected with, the very controversy that establishes
 jurisdiction.”

 ....

 First, even if the [c]ourt assumes without deciding that C[MI]’s
 distributor relationships and sales in North Carolina are
 purposeful contacts with the State adequate to satisfy specific
 jurisdiction over claims arising from those contacts, those are
 unrelated to Plaintiff’s claims against C[MI] in this litigation.

 ....

 Second, the [c]ourt agrees with C[MI] that the specific acts
 connected to the accident upon which Plaintiff relies do not
 support a finding that C[MI] purposely availed itself of doing
 business in North Carolina regarding those acts. Specifically,
 Plaintiff relies on C[MI]’s Service Manual and the FBO Services
 Link through which the Service Manual was made available to
 Air Care.

 ....

 A passive [w]eb site that does little more than make information
 available to those who are interested in it is not grounds for the
 exercise [of] personal jurisdiction.

 I. Personal Jurisdiction

¶ 37 After the trial court’s order was entered, the Supreme Court of the United

 States issued a relevant decision. In order for a forum to assert specific personal
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Tyson, J., concurring in part and concurring in the result in part

 jurisdiction over a non-resident, “there must be an affiliation between the forum and

 the underlying controversy, principally an activity or an occurrence that takes place

 in the forum state and is therefore subject to the State’s regulation.” Ford Motor Co.

 v. Mont. Eighth Judicial Dist. Ct., __ U.S. __ (2021) (slip op. at *6) (citation omitted).

 The Supreme Court of the United States has also held the suit must “arise out of or

 relate to the defendant’s contacts with the forum.” Bristol-Myers Squib Co. v.

 Superior Court of Cal., 582 U.S. __, __, 198 L. Ed. 2d. 395, 403 (2017) (emphasis

 supplied).

¶ 38 In Ford, the Supreme Court recently interpreted this quote to mean:

 The first half of that standard asks about causation; but
 the back half, after the “or,” contemplates that some
 relationships will support jurisdiction without a causal
 showing. That does not mean anything goes. In the sphere
 of specific jurisdiction, the phrase “relate to” incorporates
 real limits, as it must to adequately protect defendants
 foreign to a forum. . . . , we have never framed the specific
 jurisdiction inquiry as always requiring proof of
 causation—i.e., proof that the plaintiff’s claim came about
 because of the defendant’s in-state conduct.

 Ford Motor Co., __ U.S. at __ (slip op. at *8-9) (emphasis supplied).

¶ 39 In a footnote, the majority’s opinion in Ford re-affirms a state court does not

 necessarily have jurisdiction over a nationwide corporation for any claim, no matter

 how unrelated the corporation’s activities are to the forum state. Id. at __ ( slip op.

 at *9, n.3). Without this distinction and objective delineations, limitations on specific
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Tyson, J., concurring in part and concurring in the result in part

 personal jurisdiction for non-forum “nationwide companies” would be destroyed.

 Very few nationwide companies boast the size, scope, scale, pervasiveness, and

 ubiquitous presence across national and international markets Ford has achieved.

¶ 40 Here, CMI admits it “markets to the flying public at large” and has sold parts

 in all fifty states. CMI allegedly participated in 2,948 sales of parts transactions

 through independent distributors, which were eventually sold to North Carolina, and

 which totaled $3,933,480.65 in revenue in a three-year period preceding the accident,

 including sales of new models of the starter adapter at issue. The specific personal

 jurisdiction over non-forum defendant analysis partially “encompasses the more

 abstract matter of submitting to the coercive power of a State that may have little

 legitimate interest in the claims in question.” Bristol-Myers Squibb Co., __ U.S. at

 __, 198 L. Ed. 2d at 403.

¶ 41 This Court has upheld specific personal jurisdiction over a non-forum

 company, which availed itself of conducting business in North Carolina after a

 company mailed out 1,937 sales catalogs in North Carolina in a season, directly sold

 products to 239 North Carolina residents, and generated over $12,000 in sales. Frans

 Pecans, Inc. v. Greene, 134 N.C. App. 110, 114-15, 516 S.E.2d 647, 650-51 (1999).

¶ 42 In the complaint, Plaintiff alleged, “the defects in the aircraft engine existed at

 the time the engine and engine assemblies were built and sold, manufactured and

 designed.” None of those actions occurred in North Carolina.
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Tyson, J., concurring in part and concurring in the result in part

¶ 43 Plaintiff also alleges, and Defendant denies, the starter adapter was subject to

 a design defect, and the service manual available to Air Care was incorrect. None of

 those actions occurred in North Carolina.

¶ 44 The Lancair LC42-550FG aircraft over its life was equipped with at least three

 different starter adapters. The first starter adapter was replaced at the aircraft

 manufacturer’s factory without explanation, prior to the original sale and delivery,

 and long before the O’Neals’ subsequently acquiring the aircraft. None of those

 actions occurred in North Carolina.

¶ 45 The second starter adapter “was slipping,” which necessitated the

 replacement. The third starter adapter was not sold by CMI. It was sold from and

 by Aircraft Accessories of Oklahoma, who sold the remanufactured and overhauled

 part to Air Care in North Carolina, who ultimately installed the part on the O’Neals’

 aircraft based in North Carolina.

¶ 46 The part CMI had originally manufactured was altered, overhauled, and

 remanufactured by others without any links to or oversight by CMI. This part was

 identified by investigators as a precipitating cause of the crash and would not have

 entered North Carolina to be installed on the plane, but for the Aircraft Accessories

 of Oklahoma company. The Supreme Court of the United States, in Ford, emphasizes

 “some relationships will support jurisdiction without a causal showing.” Id. at __ (slip

 op. at *8). Neither of the two vehicles involved in the collisions in Ford, were
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Tyson, J., concurring in part and concurring in the result in part

 originally sold through a Ford Motor Company dealer network in the forum

 jurisdictions. Subsequent purchasers brought the vehicles into the respective forum

 states. Ford Motor Company neither designed nor manufactured the vehicles in the

 forums.

¶ 47 It must be noted that the phrase “relate to,” and its meaning from Ford

 “incorporates real limits.” Id. at __ (Alito, J., concurring) (slip op. at *4). The

 majority’s opinion in Ford also cautions that “does not mean anything goes. In the

 sphere of specific jurisdiction, the phrase ‘relate to’ incorporates real limits, as it must

 to adequately protect defendants foreign to a forum.” Ford Motor Co., __ U.S. at __

 (slip op. at *8-9).

¶ 48 The majority’s opinion in Ford does not articulate any guardrails or outer

 limits for lower courts to follow when evaluating whether due process concerns

 prevent a court from establishing specific personal jurisdiction over a non-forum

 defendant. See id. at __ (Gorsuch, J., concurring) (slip op. at *3).

 Where this leaves us is far from clear. For a case to “relate
 to” the defendant’s forum contacts, the majority says, it is
 enough if an “affiliation” or “relationship” or “connection”
 exists between them. But what does this assortment of
 nouns mean? Loosed from any causation standard, we are
 left to guess. The majority promises that its new test “does
 not mean anything goes,” but that hardly tells us what
 does. In some cases, the new test may prove more forgiving
 than the old causation rule. But it’s hard not to wonder
 whether it may also sometimes turn out to be more
 demanding. Unclear too is whether, in some cases like
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Tyson, J., concurring in part and concurring in the result in part

 that, the majority would treat causation and “affiliation” as
 alternative routes to specific jurisdiction or whether it
 would deny jurisdiction outright.

 Id. (internal citations omitted).

¶ 49 Multiple cases remain undisturbed where the Supreme Court of the United

 States articulated and delineated significant due process protections from assertion

 of personal jurisdiction over a non-forum defendant: Goodyear Dunlop Tires

 Operations, S.A. v. Brown, 564 U.S. 915, 921-929, 180 L. Ed. 2d 796, 804-809 (2011)

 (tire manufacturer who manufactured tires in Turkey, did not import the tire model

 into forum state, nor primarily distribute the tire model in the United States, could

 not be haled into forum for incident occurring in France despite parent company

 having large factory in forum); World-Wide Volkswagen Corp. v. Woodson, 444 U.S.

 286, 298-299, 62 L. Ed. 2d 490, 502 (1980) (“mere unilateral activity” of plaintiffs to

 bring car into forum did not establish jurisdiction because defendants did not have

 minimum “contacts, ties or relations”); Helicopteros Nacionales de Columbia, S.A. v.

 Hall, 466 U.S. 408, 416-19 80 L. Ed. 2d 404, 412-14 (1984) (forum did not acquire

 jurisdiction over Columbian corporation where that corporation contracted in Peru to

 provide services, even though some goods were purchased in and some training

 occurred in forum); Daimler AG v. Bauman, 571 U.S. 117, 139, 187 L. Ed. 2d 624, 641

 (2014) (forum may acquire general personal jurisdiction when a defendant conducts

 an overwhelming amount of activity within the forum); and, Burger King Corp. v.
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Tyson, J., concurring in part and concurring in the result in part

 Rudzewicz, 471 U.S. 462, 487, 85 L. Ed. 2d 528, 550 (1985) (forum’s exercise of

 jurisdiction not fundamentally unfair where corporation had substantial and

 continuing relationship with plaintiff-company’s headquarters in the forum, contract

 documents provided notice and the course of dealing between the parties provided

 that corporation could be subject to suit in forum).

¶ 50 Here, while CMI does not approach the nationwide size, scope, and scale of

 Ford, its activities “related to” North Carolina more align with the facts in Ford than

 those of the decoy maker in Maine selling his hand-carved unique products online

 across state lines as memorialized in Justice Gorsuch’s concurring opinion in Ford.

 Id. at __ (Gorsuch, J., concurring) (slip op., at 4).

 II. Internet Based Service Manual

¶ 51 The trial court found CMI “has not conducted any regular or ongoing

 advertising, solicitation, marketing, or other sales promotions directed toward

 residents in North Carolina.” In Havey v. Valentine, 172 N.C. App. 812, 816-17, 616

 S.E.2d 642, 647-48 (2005), our Court adopted the United States Court of Appeals for

 the Fourth Circuit rule for determining whether an internet website can become the

 basis for the exercise of personal jurisdiction in the forum in ALS Scan, Inc. v. Digital

 Serv. Consultants, Inc., 293 F.3d 707 (4th Cir. 2002). ALS Scan, Inc. adopted the

 analysis from Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119

 (W.D.Pa. 1997).
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Tyson, J., concurring in part and concurring in the result in part

¶ 52 In Havey, this Court held:

 A State may, consistent with due process, exercise judicial
 power over a person outside of the State when that person
 (1) directs electronic activity into the State, (2) with the
 manifested intent of engaging in business or other
 interactions within the State, and (3) that activity creates,
 in a person within the State, a potential cause of action
 cognizable in the State’s courts. Under this standard, a
 person who simply places information on the Internet does
 not subject himself to jurisdiction in each State into which
 the electronic signal is transmitted and received. Such
 passive Internet activity does not generally include
 directing electronic activity into the State with the
 manifested intent of engaging business or other
 interactions in the State thus creating in a person within
 the State a potential cause of action cognizable in courts
 located in the State. When a website is neither merely
 passive nor highly interactive, the exercise of jurisdiction is
 determined by examining the level of interactivity and
 commercial nature of the exchange of information that
 occurs.

 Havey, 172 N.C. App. at 816-17, 616 S.E.2d at 647-48 (emphasis supplied) (internal

 citations, quotation marks, and alterations omitted).

¶ 53 CMI’s website is an interactive informational website. The website provides

 an “online technical library” where subscribers can “access instructions and

 manuals.” Fixed-base operators and service centers, like Air Care could go to CMI’s

 website and pay a subscription fee to access the “online technical library.” CMI had

 14 paid subscribers in North Carolina. CMI posted updates to this manual and

 notified its subscribers of the updates. While Air Care maintained a subscription to
 COHEN V. CONTINENTAL MOTORS, INC.

 2021-NCCOA-449

 Tyson, J., concurring in part and concurring in the result in part

 the manual, it is unknown whether their technicians accessed or referenced the

 manual while installing the remanufactured Starter Adapter on the O’Neals’ aircraft.

¶ 54 “A passive [w]eb site that does little more than make information available to

 those who are interested in it is not grounds for the exercise [of] personal jurisdiction.”

 ALS Scan, Inc., 293 F.3d at 714. CMI supports the “online technical library” with

 updates to notify its subscribers. The website contains a commercial nature due to

 its paid subscriptions. When considered with CMI’s other contacts “related to” North

 Carolina and its “purposeful availment” of our forum, these contacts are sufficient to

 support our holding of specific personal jurisdiction. Havey, 172 N.C. App. at 815,

 616 S.E.2d 646-47; N.C. Gen. § 1-75.4 (2019).

 III. Conclusion

¶ 55 CMI properly raised the defense of lack of personal jurisdiction in its Answer

 to Plaintiff’s Complaint. A North Carolina court exercising jurisdiction, pursuant to

 our long-arm statute, does not violate the Due Process Clause of the Fourteenth

 Amendment. This interlocutory appeal is properly before this Court.

¶ 56 Consistent with Ford, CMI is being haled into North Carolina’s court, not for

 its nationwide contacts, nor fifty states’ presence, nor merely placing an item into the

 stream of commerce, but for its specific contacts with North Carolina companies and

 consumers. I concur in part and concur in the result in part.